UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| THE POKÉMON COMPANY INTERNATIONAL, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>TEE TURTLE, LLC, a Missouri limited liability company,<br><br>Defendant. | Case No.  2:15-cv-1419<br><br>COMPLAINT<br><br>JURY TRIAL DEMANDED |

## INTRODUCTION

The Pokémon Company International, Inc. ("TPCi") brings this action against Tee Turtle, LLC ("Tee Turtle"), the owner and operator of the web site located at www.teeturtle.com (the "TeeTurtle Site"), alleging copyright infringement and contributory copyright infringement. Tee Turtle's reproduction and distribution of TPCi's copyrighted Pokémon characters and images on apparel sold on the TeeTurtle Site, and Tee Turtle's inducement of, and knowing contribution to, third parties' similar acts, infringes TPCi's intellectual property rights. Accordingly, TPCi seeks damages, injunctive relief, and attorneys' fees as described herein.

## THE PARTIES

1. TPCi is a corporation formed under the laws of the State of Delaware with its principal place of business located at 601 108th Avenue NE, Suite 1600, Bellevue, Washington 98004.

2.   Upon information and belief, Tee Turtle is a limited liability company formed under the laws of the State of Missouri, with its principal place of business located at 4907 W. Pine Boulevard, St. Louis, Missouri 63108.

**JURISDICTION AND VENUE**

3.   This Court has subject-matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338 because it alleges violations of the Copyright Act, 17 U.S.C. § 101 *et seq.*

4.   This Court has personal jurisdiction over Tee Turtle because, on information and belief, Tee Turtle transacts business in the State of Washington, ships its products to the State of Washington, and targets advertising to the State of Washington and prospective consumers here. Through its web site, the TeeTurtle Site, Tee Turtle also actively solicits content from "guest designers" in the State of Washington to assist Tee Turtle in the creation of the apparel that it markets and sells. Tee Turtle further generates substantial revenue from online sales of apparel to consumers in the State of Washington to whom Tee Turtle markets its apparel through its highly interactive, commercial web site—the TeeTurtle Site—as well as at conventions taking place in the State of Washington. This Court also enjoys personal jurisdiction over Tee Turtle because this dispute arises from Tee Turtle's intentionally tortious conduct—namely, willfully and deliberately infringing TPCi's intellectual property—such that Tee Turtle has specifically targeted and injured TPCi, who resides in this judicial district.

5.   Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district and has harmed TPCi's intellectual property located in this judicial district. Furthermore, because Defendant is subject to personal jurisdiction in this judicial district, Defendant is deemed to reside in this district, and therefore venue is also proper under 28 U.S.C. § 1391(c).

**FACTUAL ALLEGATIONS**

**A.   The Pokémon Trading Card Game**

6.   TPCi manufactures, markets, and distributes a variety of children's entertainment products, including movies, television shows, games, and toys throughout the United States and

1 around the world.

2     7.    At the center of TPCi's business is the wildly-popular Pokémon trading card game (the "Trading Card Game"). The trading cards each represent a unique character or "Pokémon." Players take the role of "Trainers" and use their Pokémon to battle the other Trainers' creatures. Between games, players collect cards to assemble their optimal decks.

    8.    Each Pokémon trading card contains original artwork depicting a Pokémon character, as well as the character's powers and abilities, a description of the character, and other data indicating the card's value. For example, following is an image of a Pokémon trading card depicting the iconic character Pikachu:



    9.    TPCi owns exclusive rights under the Copyright Act for the artwork and characters that TPCi has developed over thousands of trading cards for more than a decade, and TPCi registers the works with the United States Copyright Office. Attached hereto as Exhibit A is a selection of TPCi's copyrights in these visual works and the corresponding registration numbers (collectively, the "Pokémon Works").

    10.    TPCi products, and specifically the Trading Card Game expansion sets, are rolled out to significant fanfare and marketed to millions of users both in the United States and around the world. In 2014 alone, TPCi invested more than $6 million in domestic advertising and

promotions associated with its Trading Card Game. TPCi products are directed at and enjoyed by users of all ages.

11. TPCi features the Pokémon characters not only in its vastly successful Trading Card Game, but also in a wide variety of clothing, books, toys, and other merchandise (the "Pokémon Merchandise") that TPCi creates and sells, both directly and through a world-wide network of licensees. TPCi's domestic sales of Pokémon Merchandise exceeded $6 million in 2014 alone.

12. The iconic characters and comprehensive Pokémon world that appear in the Pokémon Trading Card Game also provide a rich source of content for the 18 seasons of TPCi's long-running televised series of Pokémon cartoons and 17 full-length animated Pokémon motion pictures.

13. Through appearances in the Pokémon television series and films, together with years of development through the Trading Card Game and Pokémon Merchandise, several Pokémon characters have emerged as icons and highly recognizable members of the Pokémon universe.

14. Pikachu, the most recognizable Pokémon within the Pokémon universe, has become TPCi's principal mascot for the company and the Pokémon brand world-wide. Sample images of this iconic Pokémon appear below:

 

15. As a central character in the Pokémon universe, Pikachu also appears in the vast majority of TPCi's Pokémon game content. Pikachu has appeared on more than 70 cards in the Pokémon Trading Card Game since Pikachu's game debut in 1998, and is featured in or around the branding for championship tournaments and other events that TPCi organizes with respect to

the Trading Card Game. Pikachu has consistently featured in Pokémon Merchandise since its introduction, and TPCi's prominent use of Pikachu in such merchandise has generated enormous consumer recognition.

16. Other Pokémon characters are also highly recognizable as a result of their inclusion in the original, first wave of Pokémon. Bulbasaur, Squirtle, and Charmander are three such Pokémon.

17. Bulbasaur made its Trading Card Game debut in 1998, and has since appeared on more than 15 cards. As one of the original, first Pokémon, Bulbasaur has been featured frequently in Pokémon Merchandise. Images of Bulbasaur appear below:

 

18. Squirtle is another of the original Pokémon. Like its fellow pioneering Pokémon Bulbasaur, Squirtle made its Pokémon Trading Card Game debut in 1998 and has gone on to be featured on more than 15 cards. Squirtle also features in a variety of Pokémon Merchandise, including books, toys, games, apparel, and accessories. Images of Squirtle appear below:

 

19. Rounding out the trio, the character Charmander also debuted as part of the initial wave of Pokémon characters. Since its Pokémon Trading Card Game debut in 1998, Charmander

1  has appeared on more than 15 cards and continues to be featured in multiple Pokémon

2  Merchandise. Exemplary images of Charmander appear below:

 

9    20.    Pikachu, Bulbasaur, Squirtle, and Charmander each demonstrate how Pokémon

10  characters cultivate appeal among Pokémon fans and emerge as central elements for the designs

11  that TPCi selects for its apparel, accessories, and other Pokémon Merchandise.

12  **B.    Tee Turtle and its Sale of Infringing Items**

13    21.    Upon information and belief, Tee Turtle is a St. Louis-based online apparel

14  retailer founded by Ramy Badie. Tee Turtle purports to specialize in "cute," "funny," "nerd

15  culture" designs derived from various geek, comic, gaming, and pop culture properties.

16    22.    Tee Turtle designs, markets and sells apparel featuring designs created by "in-

17  house artists," including Tee Turtle's founder and CEO Ramy Badie.

18    23.    Tee Turtle also actively solicits artists and designers to submit their work and

19  ideas for a chance to be selected as a "TeeTurtle guest designer," whose work appears on apparel

20  marketed, sold and distributed by Tee Turtle. (*See* http://www.teeturtle.com/pages/guest-design

21  (last visited Aug. 31, 2015).)

22    24.    The TeeTurtle Site includes apparel that it currently markets and offers for sale as

23  well as a "Design Archive" page where fans can vote to reinstate "retired" designs. (*See*

24  http://www.teeturtle.com/collections/archive (last visited Aug. 31, 2015).)

25    25.    Tee Turtle markets and sells its apparel through its TeeTurtle Site as well as at

26  trade shows and conventions. According to statements attributed to Tee Turtle founder Ramy

27  Badie, as of July 2014, Tee Turtle had 11 full-time employees and eight traveling salespeople

1  "who attend nearly 100 trade shows worldwide." (*See* http://www.bizjournals.com/stlouis/print-edition/2014/07/11/ramy-badie-25-founder-and-ceo-teeturtle-llc.html (last visited Aug. 31, 2015).)

26. Upon information and belief, Tee Turtle appeared and sold apparel at the 2014 SakuraCon, an annual anime convention held at the Washington State Convention Center in downtown Seattle. Tee Turtle posted a short video on its official blog commemorating its appearance at SakuraCon. (*See* http://www.teeturtle.com/blogs/news/14007721-teeturtle-loves-conventions-and-t-shirts-of-course (last visited Aug. 31, 2015).)

27. According to online reports, Tee Turtle sold $2.4 million online in 2013 (*see* https://www.internetretailer.com/2014/10/01/millennial-marketing-puzzle (last visited Aug. 31, 2015)), and was projected to have $7 million in sales in 2014 (*see* http://www.bizjournals.com/stlouis/print-edition/2014/07/11/ramy-badie-25-founder-and-ceo-teeturtle-llc.html (last visited Aug. 31, 2015)).

28. As of mid-August 2015, a search for "pokemon" on the TeeTurtle Site returned at least 38 designs for apparel being actively marketed and sold by Tee Turtle. Many of the designs incorporate characters and other iconic visual elements derived from TPCi's copyrighted Pokémon Works. The TeeTurtle Site even includes a special "Pocket Monsters" (the Japanese name for Pokémon) field in its search options. Attached hereto as Exhibit B is a true and correct copy of the search results for "pokemon" on the TeeTurtle Site as of August 18, 2015.

29. For instance, among those 38 infringing designs on the TeeTurtle Site are designs showcasing the iconic Pokémon Pikachu as well as Bulbasaur, one of the original Pokémon. Examples of these infringing designs are shown below:

 

COMPLAINT – 7

focal PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.260.3966

 

30.     In further example, Tee Turtle's infringing apparel designs also feature two of the other original, first Pokémon, Squirtle and Charmander, as shown below:

 

 

31.     Tee Turtle has also incorporated characters and other elements derived from TPCi's copyrighted Pokémon Works in Tee Turtle's marketing and promotional materials.

32.     For example, as of August 18, 2015, the header image (shown below) on the Tee Turtle Facebook page included the Pokémon characters Sylveon, Jigglypuff, Chansey, and Ditto:



COMPLAINT – 8

focal PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.260.3966

33.     Similarly, Tee Turtle has advertised sales on its apparel using designs derived from TPCi's Pokémon Works, such as the advertisement shown below:



34.     The conduct of Tee Turtle constitutes direct and willful infringement of TPCi's copyrighted Pokémon Works. Moreover, by actively soliciting users to submit designs which Tee Turtle then incorporates into the apparel it markets and sells, Tee Turtle materially contributes to the infringement of the Pokémon Works by Tee Turtle's "guest designers."

## FIRST CAUSE OF ACTION

### (Copyright Infringement, 17 U.S.C. § 101, *et seq.*)

35.     TPCi realleges and incorporates by reference all of the allegations set forth in paragraphs 1 through 34 above.

36.     Each of the Pokémon Works constitutes an original work of authorship and copyrightable subject matter under the laws of the United States.

37.     TPCi is the sole owner of all exclusive rights in and to the Pokémon Works and the corresponding Certificates of Registration.

38.     Tee Turtle has copied, created derivative works of, distributed copies to the public, and/or displayed publicly Pokémon Works without the consent or authority of TPCi, thereby directly infringing TPCi's exclusive rights under the Copyright Act.

39.     The foregoing acts of Tee Turtle constitute infringement of TPCi's exclusive rights, in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501.

40. Tee Turtle's actions were and are intentional, willful, wanton, and performed in disregard of TPCi's rights.

41. TPCi is entitled to injunctive relief pursuant to 17 U.S.C. § 502. TPCi has no adequate remedy at law for Tee Turtle's wrongful conduct because, among other things, (a) TPCi's copyrights are unique and valuable property which have no readily determinable market value, (b) Tee Turtle's continued infringement harms TPCi such that TPCi could not be made whole by any monetary award, and (c) Tee Turtle's wrongful conduct, and the resulting damage to TPCi, is continuing.

42. TPCi has been and will continue to be damaged, and Tee Turtle has been unjustly enriched, by Tee Turtle's unlawful infringement of TPCi's copyrighted Pokémon Works in an amount to be proven at trial.

43. Alternatively, TPCi is entitled to statutory damages under 17 U.S.C. § 504(c), which damages, for the reasons set forth above, should be enhanced in accordance with 17 U.S.C. § 504(c)(2).

44. TPCi is also entitled to recover its attorneys' fees and costs of suit pursuant to 17 U.S.C. § 505.

## SECOND CAUSE OF ACTION

### (Contributory Copyright Infringement)

45. TPCi realleges and incorporates by reference all of the allegations set forth in paragraphs 1 through 44 above.

46. Upon information and belief, Tee Turtle's "guest designers," who are content providers, have copied, reproduced, prepared derivative works from, distributed to the public and/or publicly displayed, or otherwise infringed the Pokémon Works without TPCi's consent, thereby directly infringing TPCi's copyrights.

47. Tee Turtle has engaged and continues to engage in the business of knowingly and systematically inducing, causing, and/or materially contributing to the unauthorized copying, reproduction, preparation of derivative works from, distribution of copies to the public and/or

COMPLAINT – 10

focal PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.260.3966

public display of the Pokémon Works by Tee Turtle's content providers and thus to the direct infringement of the Pokémon Works.

48.     Tee Turtle's conduct constitutes contributory infringement of TPCi's copyrights and exclusive rights under copyright in the Pokémon Works in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501.

49.     Tee Turtle's actions were and are intentional, willful, wanton and performed in disregard of TPCi's rights.

50.     TPCi has been and will continue to be damaged, and Tee Turtle has been unjustly enriched, by Tee Turtle's unlawful infringement of the Pokémon Works in an amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, TPCi respectfully requests judgment be entered in its favor and against Tee Turtle, as follows:

1.     A permanent injunction enjoining and restraining Tee Turtle, and all persons or entities acting in concert with it, during the pendency of this action and thereafter perpetually from copying, creating derivative works from, distributing copies of, and/or publicly displaying the Pokémon Works;

2.     An award of damages, including, but not limited to, compensatory, statutory, and punitive damages, as permitted by law;

3.     An award to TPCi of its costs of suit, including but not limited to, reasonable attorneys' fees, as permitted by law;

4.     An order under 17 U.S.C. § 503(b) requiring Tee Turtle (A) to impound, on such terms as the Court may deem reasonable; (i) all copies claimed to have been made or used in violation of the exclusive right of TPCi; (ii) all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which such copies may be reproduced; and (iii) all records documenting the manufacture, sale, or receipt of things involved in any such violation, provided that any records seized shall be taken into the custody of the Court; and (B) to destroy,

1 or otherwise reasonably dispose of, all copies found to have been made or used in violation of
2 TPCi's exclusive rights, and all plates, molds, matrices, masters, tapes, film negatives, or other
3 articles by means of which such copies may be reproduced; and

4     5.    Such other relief as the Court deems just and proper.

5 Dated this 3rd day of September, 2015.    Respectfully Submitted,

FOCAL PLLC
By: *s/ Venkat Balasubramani*
    *s/ Stacia N. Lay*
Venkat Balasubramani, WSBA #28269
Stacia N. Lay, WSBA #30594
800 Fifth Avenue, Suite 4100
Seattle, Washington 98104
Tel: (206) 529-4827
Fax: (206) 260-3966
Email: venkat@focallaw.com
Email: stacia@focallaw.com

Attorneys for Plaintiff The Pokémon Company International, Inc.

COMPLAINT – 12

focal PLLC
800 Fifth Ave, Ste. 4100
Seattle, WA 98104
206.529.4827
206.260.3966

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, TPCi demands trial by jury in this action of all issues so triable.

DATED: September 3, 2015            FOCAL PLLC

By: *s/ Venkat Balasubramani*
Venkat Balasubramani, WSBA #28269